# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BAYS EXPLORATION, INC., a Texas corporation, and BAYS ENERGY PARTNERS 2007, L.P., a Texas limited partnership, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. CIV-07-00754-D |
| PENSA, INC., a Colorado corporation, | ) ) | |
| Defendant. | ) | |

_____

## PLAINTIFF BAYS EXPLORATION, INC.'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT; BRIEF IN SUPPORT

_____

William A. Johnson, OBA No. 4730
David A. Elder, OBA No. 20687
Matthew W. Brockman, OBA No. 22077
HARTZOG CONGER CASON & NEVILLE
201 Robert S. Kerr Avenue
1600 Bank of Oklahoma Plaza
Oklahoma City, OK 73102
Telephone:    (405) 235-7000
Facsimile:     (405) 996-3403
bjohnson@hartzoglaw.com
delder@hartzoglaw.com
mbrockman@hartzoglaw.com

April 16, 2010                 **ATTORNEYS FOR PLAINTIFFS**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

STATEMENT OF UNDISPUTED FACTS ...................................................................... 3

ARGUMENT AND AUTHORITY ................................................................................ 13

I.     PENSA RELINQUISHED ITS RIGHTS TO PARTICIPATE IN CERTAIN
WELLS BY FAILING TO PROPERLY ELECT TO PARTICIPATE
WITHIN THE 30-DAY ELECTION PERIOD .............................................. 13

        A.     PenSa Responded to the Brinlee Ann Marie Well Proposal by
Affirmatively Electing Not to Participate in the Well ........................... 14

        B.     PenSa Ignored the Wildhorse, Sandra Kay, and Maria Well Proposals. .............. 16

        C.     PenSa Failed to Respond to the Joey Well Proposal Within the 30-Day
Election Period. .................................................................................. 20

II.    PENSA BREACHED THE JOAS BY FAILING TO PAY ITS PROPORTIONATE
SHARE OF THE COSTS FOR WELLS IN WHICH IT DID PARTICIPATE .............. 23

III.   PENSA'S CLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH
AND FAIR DEALING AND BREACH OF FIDUCIARY DUTY ARE NOT
ACTIONABLE ......................................................................................... 26

# TABLE OF AUTHORITIES

## Cases

*Amarex, Inc. v. El Paso Natural Gas Co.*,
  772 P.2d 905 (Okla. 1987) ................................................................... 27

*British American Oil Producing Co. v. Midway Oil Co.*,
  82 P.2d 1049 (Okla. 1938) ................................................................... 29

*Cities Serv. Gas Co. v. Kelly-Dempsey & Co.*,
  111 F.2d 247 (10th Cir. 1940) ............................................................. 19

*Connaghan v. Maxus Exploration Co.*,
  5 F.3d 1363 (10th Cir. 1993) ............................................................... 28

*Davis v. TXO Prod. Corp.*,
  929 F.2d 1515 (10th Cir. 1991) ........................................................... 28

*Dunham v. Dunham*,
  467 So.2d 555 (La. App. 1985) ........................................................... 20

*Goetz v. State Farm Mut. Auto Ins. Co.*,
  142 N.W.2d 804 (Wis. 1966) ............................................................... 20

*Grynberg v. Dome Petroleum Corp.*,
  599 N.W.2d 261 (N.D. 1999) .............................................................. 30

*Nearburg v. Yates Petroleum Corp.*,
  943 P.2d 560 (N.M Ct. App. 1997) ..................................................... 14

*Sec. Bank & Trust Co. v. Bogard*,
  494 N.E.2d 965 (Ind. Ct. App. 1986) ................................................. 20

*21st Century Inv. Co. v. Pine*,
  734 P.2d 834 (Okla. 1986) ................................................................... 16

*Southwood Dev. Corp. v. Thomas Supply, Inc.*,
  469 So.2d 417 (La. App. 1985) ........................................................... 20

*Tarrant v. Capstone Oil & Gas Co.*,
  178 P.3d 866 (Okla. Civ. App. 2007) ................................................. 30

*Tenneco Oil Co. v. Bogert*,
  630 F.Supp. 961 (W.D. Okla. 1986) ............................................................................ 28

*Thomas v. Dancer*,
  264 P.2d 714 (Okla. 1953) ......................................................................................... 19

## Statutes

15 Okla. Stat. § 157 ..................................................................................................... 19

42 Okla. Stat. § 6 ......................................................................................................... 26

## Other Authorities

17 C.J.S. *Contracts* § 314 ........................................................................................... 19

*E. Kuntz,* Law of Oil & Gas, at § 19A.6(c) ................................................................. 28

## Rules

Rule 56 of the Federal Rules of Civil Procedure ............................................................ 1

**PLAINTIFF BAYS EXPLORATION, INC.'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT; BRIEF IN SUPPORT**

Plaintiff, Bays Exploration, Inc. ("Bays Exploration"), pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby moves the Court for partial summary judgment in favor of Plaintiff and against the Defendant PenSa, Inc. ("PenSa").  In support hereof, Plaintiff would show the Court as follows:

## INTRODUCTION

This lawsuit concerns the various agreements that Plaintiff Bays Exploration and Defendant PenSa entered regarding the drilling and operation of a number oil and gas wells located in Oklahoma.[1]  The arrangements between the parties are governed by a series of AAPL Form 610-1989 Model Form Joint Operating Agreements ("JOAs"), as well as an Area of Mutual Interest Letter Agreement ("AMI").  All agreements appoint Bays Exploration as the Operator of the particular well or contract area.

The parties have asserted a number of claims and counterclaims that generally relate to: (1) Bays Exploration's operation of the jointly owned wells and properties; and (2) the effect of Bays Exploration's sale of its interests in the jointly owned wells and properties to Plaintiff Bays Energy Partners 2007, L.P. ("Bays Energy Partners").  This motion seeks partial summary judgment with respect to the claims and counterclaims falling under the first category.

---

[1] For a summary of the factual background of the case and the parties' competing claims, see United States Magistrate Judge Doyle W. Argo's Order regarding the parties' competing motions to compel.  [Doc. No. 63 at pp. 1-6.]

As shown herein, PenSa's failure to pay its proportionate share of the estimated dry hole costs on proposed wells as required by the applicable JOAs resulted in PenSa's classification as "Non-Consent," and in some case resulted in the relinquishment of PenSa's interests in those wells and the drilling and spacing units surrounding them. Moreover, PenSa's refusal to pay its share of the joint interest billings for the wells in which it did participate constitutes an event of default under the applicable agreements, and has resulted in the suspension of PenSa's rights under those agreements as well as the filing of an Operator's lien that is valid and superior to PenSa's interest in the subject wells and properties. Additionally, PenSa's claims for breach of the duty of good faith and fair dealing and breach of fiduciary duty are insufficient as a matter of law because Oklahoma does not recognize any such duties separate and apart from the duties and obligations arising from a joint operating agreement. Therefore, Bays Exploration moves the Court to enter partial summary judgment finding as a matter of law the following:

1) PenSa's attempted election to participate in the Konlee Jae No. 2-35 a/k/a Joey No. 1-35 Well on the 34th day after it received the well proposal was not timely and resulted in PenSa's classification as "Non-Consent" under the relevant operating agreement;

2) PenSa's affirmative election not to participate in the Brinlee Ann Marie No. 1-26 Well resulted in the relinquishment of PenSa's right to participate in that well and PenSa is not entitled to make a retroactive election to participate;

3) PenSa's failure to respond to Bays Exploration's well proposals for the Wildhorse No. 1-26, the Sandra Kay No. 1-26, and the Maria No. 1-26 wells resulted in the relinquishment of PenSa's right to participate in those wells and PenSa is not entitled to make a retroactive election to participate;

4)  PenSa's failure to pay its proportionate share of the joint interest billings for the operation of wells in which it did participate constitutes a breach of contract and is an event of default under the applicable agreements;

5)  Bays Exploration was entitled to suspend PenSa's rights under the various agreements as a result of PenSa's default under those agreements;

6)  Bays Exploration's Operator's Lien is valid, enforceable, and superior to any right, title, or interest PenSa claims to hold in the subject wells and properties;

7)  PenSa cannot maintain its claims for an alleged breach of the duty of good faith and fair dealing because no such duty exists outside of the terms of the written contracts; and

8)  PenSa cannot maintain its claims for an alleged breach of fiduciary duty because the various JOAs do not give rise to such a fiduciary duty on the part of Bays Exploration.

## STATEMENT OF UNDISPUTED FACTS

1.  Bays Exploration is a Texas corporation, with its principal place of business in Oklahoma City, Oklahoma.  Bays Exploration is engaged in the business of oil and gas exploration.  PenSa is a Colorado corporation with its principal place of business in Littleton, Colorado.  [Doc. No 72 at pp. 1-2, ¶¶ 1-3; Doc. No. 74 at p. 1 ¶¶ 1-3.]

2.  On or about April 12, 2005, Bays Exploration and PenSa entered into that certain Letter Agreement ("TVN AMI Agreement") regarding the creation of a "Area of Mutual Interest" ("AMI") for the purpose of acquiring oil and gas leasehold and mineral interest in the following described lands located in Township 1 North, Range 1 East of Garvin County and Murray County, Oklahoma: all of Sections 22, 23, 26 and 27; the

3

West Half of Section 24; the West Half of Section 25; and the North Half of Section 34.

*See* Exhibit 1, TVN AMI Agreement.

3.      The TVN AMI Agreement contains numerous provisions, including those that state:

> (i)     at page 2 of the TVN AMI Agreement, that Bays Exploration shall be the Operator;
>
> (ii)    at page 2 of the TVN AMI Agreement, that the oil and gas leases acquired by the parties in the AMI were subject to the provisions of an A.A.P.L. Form 610-1989 Model Form Operating Agreement;
>
> (iii)   at page 2 of the TVN AMI Agreement, that in the event of a conflict between the TVN JOA and TVN AMI Agreement, that the TVN AMI Agreement "shall prevail";
>
> (iv)   at page 2 of the TVN AMI Agreement, that the parties agreed that following the drilling and completion of the initial test well, the first subsequent well in the prospect would not be commenced until 90 days after the date of first production in the initial test well without the written approval of the parties;
>
> (v)    at page 2 of the TVN AMI Agreement, that PenSa, as a non-operating party, must pay its share of the dry hole costs, along with any other outstanding costs that may have previously been billed under the terms of the agreement, concurrent with its election to participate in any proposed drilling operation;
>
> (vi)   at page 3 of the TVN AMI Agreement, that the "failure by a non-operator to make such payments within such thirty day period shall be deemed an election to relinquish 100% of such non-operator's interest in the well and the acreage within the geographical limits of the largest drilling and spacing units surrounding such proposed well."

*See* Exhibit 1, TVN AMI Agreement at pp. 2-3.

4.      With respect to wells drilled subsequent to the initial test well in the TVN Prospect, the TVN AMI Agreement also states, "it is the intent of Bays and PenSa that

4

no well will be proposed more than thirty days prior to the anticipated spud date." *See* Exhibit 1, TVN AMI Agreement at page 2.  According to PenSa, the language was intended "to prevent [Bays Exploration] from holding [PenSa's] money indefinitely with [Bays Exploration] drawing interest on it" until it drilled the well.  *See* Exhibit 2, Letter from Louis Pendleton dated April 13, 2007.

5.     The A.A.P.L. Form 610-1989 Model Form Operating Agreement referred to in the TVN AMI Agreement (the "TVN JOA") is dated March 1, 2005 and is attached to, and incorporated in, the TVN AMI Agreement.  *See* Exhibit. 1, TVN AMI Agreement at Exhibit "A".  The TVN JOA is also attached separately hereto as Exhibit 3.

6.     The TVN JOA provides that any party may propose the drilling of additional well(s) subsequent to the initial well by issuing a written notice that describes the work to be performed for the new well, the location of the new well, the proposed depth of the new well, the objective zone and the estimated cost of the operation.  *See* Exhibit 3, TVN JOA at pp. 5-6, Art. VI(B).

7.     Pursuant to the TVN JOA and the TVN AMI agreement, Bays Exploration drilled the initial test well in the TVN Prospect, named the Laticia Lee Well No. 1, located in the S/2 SW/4, Sec. 23, Township 1 North, Range 1 East, Garvin County, Oklahoma ("Laticia Lee Well").  PenSa elected to participate in the Laticia Lee Well under the terms of the TVN AMI Agreement.  *See* Exhibit 1, TVN AMI Agreement; Exhibit 4, Affidavit of Steve Ramsey ("Ramsey Affidavit").

8.     Bays Exploration spud the Laticia Lee Well on April 25, 2005.   The Laticia Lee was successfully completed on or about September 7, 2005.   The date that the Laticia Lee first produced hydrocarbons was no later than October, 2005.   *See* Exhibit 4, Ramsey Affidavit; Exhibit 5, Laticia Lee Gauge Sheet.

9.     Bays Exploration, Inc. issued its letter of April 21, 2006, proposing to drill the Brinlee Ann Marie No. 1 Well, located in the Northwest quarter of Section 26, Township 1 North, Range 1 East, Garvin County, Oklahoma ("Brinlee Ann Marie Well").   The Brinlee Ann Marie Well Proposal was issued pursuant to the TVN JOA and the TVN AMI Agreement.   PenSa returned a copy of the notice letter and indicated in the appropriate box that PenSa "declined to participate."   *See* Exhibit 4, Ramsey Affidavit; Exhibit 6, Brinlee Ann Marie Well Proposal dated April 21, 2006; Exhibit 7, PenSa's Election Not to Participate.

10.     Under the terms of the TVN JOA, Bays Exploration, as Operator, was required to "commence operations" of the Brinlee Ann Marie within 90 days after the expiration of the 30 day notice period (or within 120 days from the date of the Well Proposal).   *See* Exhibit 3, TVN JOA at p. 6, Article VI(B)(2)(a).   Bays Exploration timely commenced the drilling of the Brinlee Ann Marie on or about June 13, 2006 by building a surface location for the well.   *See* Exhibit 4, Ramsey Affidavit; Exhibit 8, Copies of invoices for the Brinlee Ann Marie location build.

11.     Bays Exploration spud the Brinlee Ann Marie Well in November, 2006. The Brinlee Ann Marie was successfully completed in the Bromide formation in March,

2007.  The Brinlee Ann Marie has been capable of continuously producing hydrocarbon paying quantities since its completion.  *See* Exhibit 4, Ramsey Affidavit.

12.     On December 1, 2006, Bays Exploration proposed to drill the Wildhorse Well (then known as the Brinlee Ann Marie No. 2 Well), located in the SW/4 of Section 26, Township 1 North, Range 1 East, Garvin County, Oklahoma ("Wildhorse Well").  The Wildhorse Well Proposal was issued pursuant to the TVN JOA and the TVN AMI Agreement.  PenSa did not respond to the Wildhorse Well Proposal.  *See* Exhibit 4, Ramsey Affidavit; Exhibit 9, Wildhorse Well Proposal dated December 1, 2006.

13.     On January 25, 2007, Bays Exploration proposed to drill the Sandra Kay Well (then known as the Brinlee Ann Marie No. 3 Well) located in the SW/4 of Section 26, Township 1 North, Range 1 East, Garvin County, Oklahoma ("Sandra Kay Well").  The Sandra Kay Well Proposal was issued pursuant to the TVN JOA and the TVN AMI Agreement.  PenSa did not respond to the Sandra Kay Well Proposal.  *See* Exhibit 4, Ramsey Affidavit; Exhibit 10, Sandra Kay Well Proposal dated January 25, 2007.

14.     On March 8, 2007, Bays Exploration proposed to drill the Maria No. 1 Well, located in the NE/4 of Section 26, Township 1 North, Range 1 East, Garvin County, Oklahoma ("Maria Well").  The Maria Well Proposal was issued pursuant to the TVN JOA and the TVN AMI Agreement. PenSa did not respond to the Maria Well Proposal.  *See* Exhibit 4, Ramsey Affidavit; Exhibit 11, Maria Well Proposal dated March 8, 2007.

15.     Bays Exploration timely commenced, and successfully drilled and completed the Wildhorse Well, the Sandra Kay Well and the Maria Well.  Despite its

failure to respond to the Well Proposal Letters for each well, and despite its failure to pay any of the drilling costs incurred in drilling the wells, PenSa claims that it has some right, title or interest in and to the Wildhorse Well, the Sandra Kay and/or the Maria Well. *See* Exhibit 4, Ramsey Affidavit. [*See also* Doc. No. 74 at pp. 5-7.]

16.    Pursuant to that certain A.A.P.L. Form 610-1989 Model Form Operating Agreement dated November 30, 2000 ("Treasure Valley JOA"), Bays Exploration is also the Operator of an oil and gas prospect referred to as "Treasure Valley."  PenSa is a non-operator/working interest owner in the Treasure Valley Prospect and is a party to the Treasure Valley JOA.  See Treasure Valley JOA attached hereto as Exhibit 12.

17.    The Treasure Valley JOA contains provisions identical to those found in the TVN JOA regarding the proposal of wells. The Treasure Valley JOA provides that a party to whom such notice is delivered shall have thirty (30) days after receipt of the notice within which to notify the party proposing the well whether they elect to participate in the cost of the proposed operation.   The party's failure to elect to participate constitutes an election not to participate and results in the relinquishment of the Non-Consenting Party's interest in the proposed operation.  *See* Exhibit 12, Treasure Valley JOA at pp. 6-7, Art. VI(B)(2)(b).

18.    On or before January 25, 2007, Bays Exploration proposed the drilling of the Konlee Jae No. 2-35 (later renamed the Joey No. 1-35) in the N/2 NE/4 Section 35-1N-1E to a depth of 10,000 feet or a sufficient depth to test the Bromide formation ("Konlee Jae Well").  The Konlee Jae Well Proposal and AFE were transmitted via facsimile to PenSa on January 25, 2007.  *See* Exhibit 13, Konlee Jae Well Proposal

8

dated January 25, 2007.    The Well Proposal and AFE were also sent via certified mail, which was delivered and signed for by PenSa on January 27, 2007.  *See* Exhibit 4, Ramsey Affidavit; Exhibit 14, Fax Transmission Sheet dated January 25, 2007; Exhibit 15, Certified Mail Receipt signed by PenSa on January 27, 2007.

19.    PenSa did not timely elect to participate in the Joey Well.  Instead, PenSa notified Bays Exploration of its willingness to participate in the Joey Well on February 28, 2007, four (4) days after its 30-day election period had expired.  *See* Exhibit 16, PenSa's Notice of Election dated February 28, 2007.  Bays Exploration advised PenSa that the election was untimely and therefore ineffective under the applicable JOA.  *See* Exhibit 4, Ramsey Affidavit.

20.    Unlike the wells mentioned above, PenSa did elect to participate as a non-operator/working interest owner in the following-described oil and gas wells in the Treasure Valley Prospect:

     (i)     Hallee Blair #1, N/2NE/4, Sec. 35, T1N, R1E,Garvin County, Oklahoma;

     (i)     Konlee Jae #1, S/2NE/4, Sec. 35, T1N, R1E , Garvin County Oklahoma;

     (ii)     Donna Sue #1, S/2NW/4 Sec. 35, T1N, R1E , Garvin County, Oklahoma;

     (iii)     Ethel Lou #1, N/2NW/4, Sec. 35, T1N, R1E , Garvin County, Oklahoma;

     (iv)     Dulaney #1-36 S/2NW/4, Sec. 36, T1N, R1E , Garvin County, Oklahoma;

     (v)     Anderson #1, N/2SW/4, Sec. 36, T1N, R1E , Garvin County, Oklahoma;

> (vi)  El Ray #1, S/2SW/4, Sec. 36, T1N, R1E , Garvin County, Oklahoma;
>
> (vii)  Tammy #1, S/2SE/4, Sec. 36, T1N, R1E Garvin County, Oklahoma.

*See* Exhibit 4, Ramsey Affidavit.

21.    PenSa also elected to participate as a non-operator/working interest owner

in the following-described oil and gas wells in the Golden Trend Prospect:

> (i)  Wildman #1, N/2NW/4, Sec. 24, Township 5 North, Range 5 West, Garvin County, Oklahoma;
>
> (ii)  Vicki Kay #1, W/2NW/4,Sec. 15, Township 3 North, Range 3 West, Garvin County, Oklahoma;
>
> (iii)  R. C. Stephens #1, E/2NW/4, Sec. 14, Township 3 North, Range 3 West, Garvin County, Oklahoma;
>
> (iv)  J. A. Payne #1, W/2, Sec. 2, T3N R3W, Garvin County, Oklahoma;

*See* Exhibit 4, Ramsey Affidavit.

22.    Bays Exploration and PenSa have also executed the following AAPL Form

No. 610-1989 Model Form Operating Agreements, as amended by special provisions:

> (i)  dated September 19, 2002, appointing Bays Exploration as the Operator, and naming PenSa as a non-operator, in the R. C. Stephens No. 1 Well;
>
> (ii)  dated July 15, 2002, appointing Bays Exploration as the Operator, and naming PenSa as a non-operator, in the Vicki Kay #1 Well;
>
> (iii)  dated December 15, 2001, appointing Bays Exploration as the Operator, and naming PenSa as a non-operator, in the Wildman No. 1 Well;
>
> (iv)  dated April 14, 2003, appointing Bays Exploration as the Operator, and naming PenSa as a non-operator, in the J. A. Payne No. 1 Well.

The R.C. Stephens JOA, the Wildman JOA, the Vicki Kay JOA, and the J.A. Payne JOA are attached hereto and marked respectively as Exhibits 17, 18, 19 and 20.

23.     As part of its obligations as a non-operator/working interest owner in the above-described oil and gas wells, PenSa is required to timely pay its proportionate share of the joint interest billings ("JIBs") on those wells in which it participates. However, since prior to the filing of the lawsuit, PenSa has consistently failed and/or refused to pay its JIBs for the oil and gas wells operated by Bays Exploration in which PenSa elected to participate.  *See* Exhibit 4, Ramsey Affidavit.

24.     As of the date of the most recent billing, there is now due and owing Bays Exploration the sum of $1,342,098.35.  *See* Exhibit 4, Ramsey Affidavit; Exhibit 21, Detail of Unpaid JIB Charges.

25.     Each of the unpaid JIBs described above have remained unpaid for a period exceeding ninety (90) days.  Consequently, and as provided in each applicable JOA, Bays Exploration delivered to PenSa the requisite Notices of Default.  *See* Exhibit 4, Ramsey Affidavit; Exhibit 22, Notice of Default Letters.

26.     These Notices of Default specified the default for each well, specified what action PenSa should take to clear the default, and further specified that PenSa's failure to cure the default would result in Bays Exploration's exercise of one or more of the remedies provided in the JOA.  *See* Exhibit 22, Notice of Default Letters.  PenSa's proffered expert witness, John R. Reeves, testified that the Notice of Default letters upon which Bays Exploration relies, those dated after December 1, 2008, are proper notice of

11

default in compliance with the requirements in the applicable JOAs.  *See* Exhibit 23, Reeves Deposition at 347:21-348:22.

27.    Despite these notices, PenSa has refused to cure the described defaults and/or otherwise pay any portion of the unpaid JIBs.  In light of PenSa's refusal to cure the defaults under each applicable JOA and/or otherwise pay the JIBs, Bays Exploration has notified PenSa that any and all rights of PenSa under each JOA are suspended.  *See* Exhibit 4, Ramsey Affidavit.

28.    Each of the various JOAs referenced above contains certain provisions addressing the parties' rights when a non-operator, such as PenSa, fails to timely pays its proportionate share of charges made to the wells' "Joint Account."  The JOAs create a contractual lien in favor of Bays Exploration as Operator for all charges made to the wells' "Joint Account" that were incurred by Bays Exploration and not reimbursed by PenSa.  The JOAs also allow Bays Exploration to suspend PenSa's rights under the agreements in the event PenSa is in default. *See generally* Article VII at pp.11-13 of Exhibits 3, 12, and 17-20.

29.    Pursuant to each applicable JOA for the Bays Exploration operated wells in which PenSa claims an interest, Bays Exploration claims an Operator's Lien in an amount equal to the total amounts that PenSa is in default due to the non-payment of its joint interest billings.  To protect its interests, and as allowed by law, Bays Exploration filed Operators Liens on PenSa's share of operating revenue in an amount equal to PenSa's past due JIB payments, plus interest and penalties under the applicable JOAs. *See* Exhibit 24, Copies of the Operator Liens filed by Bays Exploration.

## ARGUMENT AND AUTHORITY

### I.  PENSA RELINQUISHED ITS RIGHTS TO PARTICIPATE IN CERTAIN WELLS BY FAILING TO PROPERLY ELECT TO PARTICIPATE WITHIN THE 30-DAY ELECTION PERIOD

Plaintiffs' Second Amended Complaint includes three claims for declaratory relief arising from PenSa's relinquishment of its interests in the Wildhorse; the Sandra Kay; and the Maria Wells.  [*See* Doc. No. 72 at pp. 14-18.]  Defendant's Second Amended Counterclaim includes claims for declaratory relief relating to the well proposals for two additional wells, including the Konlee Jae a/k/a Joey; and the Brinlee Ann Marie Wells. [Doc. No. 74 at. pp. 16-17.]

The Brinlee Ann Marie, the Wildhorse, the Sandra Kay, and the Maria Wells are all part of the "Treasure Valley North" prospect and are governed by the TVN AMI Agreement and the incorporated TVN JOA, attached hereto as Exhibits 1 and 3.  The Joey Well is part of the "Treasure Valley" prospect and is governed by the Treasure Valley JOA attached hereto as Exhibit 12.

Both the TVN JOA and the Treasure Valley JOA require PenSa to notify Bays Exploration of PenSa's election to participate in proposed operations within 30 days of receiving any well proposal.  Further, the TVN AMI Agreement also requires PenSa to pay its proportionate share of the dry hole costs concurrently with its election to participate.  The purpose of these provisions is to require the non-operator to make a timely election to participate in the potential risks and rewards of the proposed operations.  *See Nearburg v. Yates Petroleum Corp.*, 943 P.2d 560, 570 (N.M Ct. App.

1997) ("The purpose of the [30-day election] is to encourage the parties to the agreement to make an election, in a timely manner, to participate or not."). The 30-day election period is also designed to prevent a working interest owner, such as PenSa, from "riding the well down," or sharing in the rewards of a productive well without being exposed to its proportionate share of the upfront risks. *See id.* at 570 ("If a non-consenting party, without sharing in the risk, were entitled to share equally in the proceeds, most operating companies would not be willing to undertake a drilling operation.").

PenSa's failure to make such an election and to pay its proportionate share of the drilling costs constitutes an election not to participate and results in the relinquishment of PenSa's interest in the well. The undisputed facts show that PenSa failed to properly elect to participate in these wells within the 30-day election period. Therefore, under the terms of the applicable JOAs, PenSa has relinquished its interests in these wells.

## A. PenSa Responded to the Brinlee Ann Marie Well Proposal by Affirmatively Electing Not to Participate in the Well

PenSa admits that it affirmatively declined to participate in the Brinlee Ann Marie Well. [Doc. No. 74 at p. 17 ¶ 29]; *see also* Ex. 7, Election Not to Participate. Incredibly, however, PenSa seeks to make a "retroactive" election in the Brinlee Ann Marie Well despite this affirmative election not to participate. It should not surprise the Court to learn that the Brinlee Ann Marie Well is one of the most productive wells in the entire Treasure Valley North Prospect. PenSa's brazen argument that it is entitled to share in the rewards of this productive well despite its affirmative election not to

14

participate in the risk of drilling the well is contrary to both the plain language and the spirit of the JOA.

Bays Exploration provided its written well proposal for the Brinlee Ann Marie Well on April 21, 2006.  Exhibit 6, Brinlee Ann Marie Well Proposal.  PenSa affirmatively elected not to participate on or about May 19, 2006.  Exhibit 7, Election Not to Participate.  Pursuant to the terms of the Treasure Valley North JOA, Bays Exploration was required to "commence operations" within 120 days from April 21, 2006, or on or before August 19, 2006.  *See* Exhibit 3, TVN JOA at pp. 5-6, Article VI(B).  Bays Exploration "commenced operations" within this deadline by constructing the drilling location on June 13, 2006.[2]  *See* Exhibit 8, Copies of invoices for the Brinlee Ann Marie location build; *see also* Ex. 23, Reeves Depo. at 2721:2-272:23.

Additionally, because the Brinlee Ann Marie Well was the first subsequent well after the initial test well in the Treasure Valley North Prospect, Bays Exploration was not allowed to "commence drilling operations until 90 days after the date of first production in the initial well [the Laticia Lee] without the written approval of the parties hereto."  The date of first production from the Laticia Lee Well was no later than October 2005.  Ex. 5, Laticia Lee Gauge Sheet; *see also* Ex.23, Reeves Depo. at 263:24-269:9.  Operations were commenced on the Brinlee Ann Marie Well on June, 13, 2006,

---

[2] The phrase "commence operations" in the oil and gas industry is generally accepted to include all preparatory operations necessary for the drilling operation such as building the drilling pad, drilling a "rat hole" or even transporting the drilling rig to location.  *See 21st Century Inv. Co. v. Pine*, 734 P.2d 834, 839-40 (Okla. 1986) (citing 3 E. Kuntz, *A Treatise on the Law of Oil and Gas* § 32.3 at p.70 (1967)); *Wagner & Brown v. E.W. Moran Drilling Co., Inc.*, 702 S.W.2d 760 (Ct. App.–Fort Worth 1986, no writ).

or more than seven (7) months after the date of first production on the Laticia Lee Well. Therefore, the commencement date of operations on the Brinlee Ann Marie complied with the requirements of the TVN AMI Agreement.

The evidence clearly shows that Bays Exploration complied with its obligations under Article VI(B) of the Treasure Valley North JOA by commencing operations within the deadline of 120 days from the date of the well proposal. Nevertheless, PenSa claims that the Court should disregard PenSa's affirmative election not to participate in this well and should grant PenSa the right to "retroactively" elect to participate, allegedly because Bays Exploration failed to "commence operations" within the required time period. As discussed above, there is absolutely no basis in law or fact that would support PenSa's claimed right to make a retroactive election to participate in a well in which it affirmatively elected not to participate. Therefore, there is no genuine issue of material fact that would support PenSa's Seventh Cause of Action [Doc. No. 74 at pp. 17], and summary judgment in favor of Plaintiffs on this cause of action is proper.

## B.   PenSa Ignored the Wildhorse, Sandra Kay, and Maria Well Proposals.

The Wildhorse, Sandra Kay, and Maria Wells are all governed by the TVN AMI Agreement, and the incorporated TVN JOA. These agreements require PenSa to notify Bays Exploration of PenSa's election to participate *and* to pay in full PenSa's share of the dry hole costs within the 30 days of receiving Bays Exploration's well proposal. *See* Exhibit 1, TVN AMI Agreement at pp. 2-3; Exhibit 3, TVN JOA at pp. 5-6, Art. VI(B). With respect to each of these three wells, PenSa did not notify Bays Exploration of its

16

election to participate and has *never* paid PenSa's share of the dry hole costs.  By failing to pay its share of the dry hole costs for each of these wells within 30 days of receiving the well proposal, PenSa relinquished its interest in each of these wells and the acreage within the geographical limits of the largest drilling and spacing unit surrounding each of these wells.  *See* Exhibit 1, TVN AMI Agreement at pp. 2-3.

PenSa cannot dispute that it did not elect to participate in these wells and did not pay its share of the dry hole costs within 30 days of the well proposal as required by the TVN AMI Agreement and TVN JOA.  Nevertheless, PenSa again claims that it should be allowed to make a "retroactive" election to participate in these wells because Bays Exploration failed to commence the well within 30 days of the date of the well proposal. Obviously, such a "retroactive" election would have a substantial value as PenSa would not bear any of the risks associated with the drilling of the wells because it now knows which wells are productive and worthy of investment.  PenSa's claim that it is entitled to make a "retroactive" election to participate in these wells is simply an attempt to "ride the well down" and force its way into wells in which it took no risk, but which it now knows to be productive.

PenSa claims that this alleged right to "retroactively" elect to participate in these wells arises from a single sentence in the TVN AMI Agreement that states: "It is the intent of Bays and PenSa that no well will be proposed more than 30 days prior to the anticipated spud date."  *See* Exhibit 1, TVN AMI Agreement at pp. 2-3.  However, as admitted by PenSa's own expert, this statement creates no binding obligation and does not alter the clear and unambiguous timelines contained in the TVN JOA, which states

17

that Bays Exploration must commence operations no later than 120 days from the date of the well proposal.  Exhibit 3, TVN JOA at p. 6, Art. VI(B)(2)(a); *see also* Ex. 23, Reeves Depo. at 273:2-275:15.

PenSa argues that one isolated statement of *intention* in the TVN AMI Agreement somehow trumps the unambiguous operative language of Article VI(B) of the TVN JOA and requires Bays Exploration to commence operations within 30 days of any well proposal.  Moreover, PenSa also argues that if Bays Exploration fails to commence operations within 30 days of any well proposal, PenSa must be allowed to make a "retroactive" election to participate even though PenSa did not originally so elect.

The Court must construe a written contract in such a way as to "give effect to every part, if reasonably practicable, each clause helping to interpret the others."  15 Okla. Stat. § 157.  "[A]pparently conflicting provisions should be reconciled if that can be done by any reasonable construction."  *Cities Serv. Gas Co. v. Kelly-Dempsey & Co.*, 111 F.2d 247, 249 (10th Cir. 1940) (citation omitted).  Moreover, the Court may disregard any precatory language of intent where the operative provisions of the contract are clear and unambiguous.  *See Thomas v. Dancer*, 264 P.2d 714, 717-18 (Okla. 1953) (citing 17 C.J.S. *Contracts* § 314 and holding that a "mere recital of the intention of the parties" may be disregarded where the operative clauses are clear and unambiguous).

Precatory statements of intent or desire cannot establish binding obligations that do not otherwise exist in the contract.  *See e.g.*, *Sec. Bank & Trust Co. v. Bogard*, 494 N.E.2d 965, 969 (Ind. Ct. App. 1986) (a mere statement of intention is not a "promise" for purposes of doctrine of promissory estoppel or formation of contract); *Dunham v.*

18

*Dunham*, 467 So.2d 555, 563 (La. App. 1985) ("[I]t is well settled [under Louisiana law] that precatory terms or recommendations in an instrument may be treated as not written."); *Southwood Dev. Corp. v. Thomas Supply, Inc*., 469 So.2d 417, 419 (La. App. 1985) (finding language of street-paving contract requesting development corporation to "try to have it ready for use in 90 days, if possible," did not express any extinctive term or binding obligation but was more of a precatory request that obligation to pave street be performed within expressed 90-day period); *Goetz v. State Farm Mut. Auto Ins. Co.*, 142 N.W.2d 804, 807 (Wis. 1966) (it must be reasonably apparent from a fair interpretation that the alleged promisor has agreed to do the act in question; a mere expression of intention is insufficient for this purpose).

The statement of *intent* contained in the TVN AMI Agreement is not inconsistent with the clearly defined commencement period established by Article VI(B) of the TVN JOA. This precatory language in the TVN AMI Agreement can, and therefore must, be read consistently with Article VI(B) of the TVN JOA. The parties merely expressed their *intent* that no well would be proposed more than 30 days prior to the anticipated spud date; however, the parties also recognize that under certain circumstances, specified in Article VI(B), a well may be proposed 120 days prior to spud date. *See* Ex.23, Reeves Depo. at 273:2-275:15.

In fact, PenSa's own interpretation of the relevant language undermines any argument that PenSa should be allowed a retroactive election in these wells. PenSa has stated that the purpose of this language was "to prevent [Bays Exploration] from holding [PenSa's] money indefinitely with [Bays Exploration] drawing interest on it" until such

time as it actually drilled the well.  Exhibit 2, Letter from Louis Pendleton dated April

13, 2007.  Under this interpretation, it is absolutely amazing that PenSa now claims that

this provision would allow PenSa to make a retroactive election in wells in which it

never paid a penny to Bays Exploration.  Bays Exploration could not possibly have

benefitted from any delay in operations on these wells where PenSa never paid its share

of the well costs, meaning there was no PenSa money on which to draw interest.  Under

PenSa's own interpretation of the TVN AMI Agreement, this 30-day operations

"requirement" did not apply to the Wildhorse, Sandra Kay, and Maria Wells because

PenSa never paid its share of the dry hole costs to Bays Exploration.

PenSa's argument for a "retroactive" election is nothing more than a late attempt

to "ride down" or "back-in" to wells that have proven to be productive and is clearly

barred by the plain language of the JOA.  The undisputed evidence clearly shows that

PenSa failed to notify Bays Exploration of PenSa's intention to participate in these wells

and failed to pay PenSa's proportionate share of the dry hole costs for these wells within

the 30-day election period as required by the TVN AMI Agreement.  Therefore, there is

no genuine issue of material fact that would oppose Plaintiffs' Third, Fourth and Fifth

Causes of Action [Doc. No. 72 at pp. 14-18], and summary judgment in favor of Bays

Exploration on all of these causes of action is proper.

### C.   PenSa Failed to Respond to the Joey Well Proposal Within the 30-Day Election Period.

The Joey Well is governed by the Treasure Valley JOA.  *See* Exhibit 12, Treasure

Valley JOA at p.1.  Article VI of the Treasure Valley JOA governs the Drilling and

Development of the Treasure Valley prospect and includes a provision for "subsequent operations," which reads in pertinent part as follows:

> If any party hereto should desire to drill any well on the Contract Area other than the Initial Well, . . . the party desiring to drill . . . such a well shall give written notice of the proposed operation to the parties . . . specifying [1] the work to be performed, [2] the location, [3] proposed depth, [4] objective Zone, and [5] the estimated cost of the operation. *The parties to whom such a notice is delivered shall have thirty (30) days after receipt of the notice within which to notify the party proposing to do the work whether they elect to participate in the cost of the proposed operation. . . . Failure of a party to whom such notice is delivered to reply within the period above listed shall constitute an election by that party not to participate in the cost of the proposed operation.*

*See* Exhibit 12, Treasure Valley JOA at pp. 5-6, Article VI(B).   Article XII of the Treasure Valley JOA establishes the process by which all notices, including well proposals, are to be transmitted:

> All notices authorized or required between the parties by any of the provisions of this agreement, unless otherwise specifically provided, shall be in writing and delivered in person *or* by United States mail, courier service, telegram, *telex, telecopier or any other form of facsimile*, . . .   The originating notice given under any provision hereof shall be deemed delivered only when received by the party to whom such notice is directed, and *the time for such party to deliver any notice in response thereto shall run from the date the originating notice is received.   "Receipt" for purposes of this agreement with respect to written notice delivered hereunder shall be actual delivery of the notice to the address of the party to be notified specified in accordance with this agreement, or to the telecopy, facsimile or telex of such party.*

*See* Exhibit 12, Treasure Valley JOA at p. 16, Article XII.

The plain language of the Treasure Valley JOA makes clear that PenSa's 30-day election period begins to run upon the successful transmission of a facsimile of a well proposal satisfying the five requirements of Article VI(B).   Under the terms of the

operating agreement, PenSa's failure to notify Bays Exploration of PenSa's election to participate in the proposed operation within 30 days of its receipt of the well proposal "constitutes an election by [PenSa] not to participate in the cost of the proposed operation." *See* Exhibit 12, Treasure Valley JOA at p. 6, Article VI(B).

On or before January 25, 2007, Bays Exploration proposed the drilling of the Konlee Jae No. 2-35 (later renamed the Joey No. 1-35). *See* Exhibit 13, Konlee Jae Well Proposal. The Joey Well proposal was transmitted via facsimile to PenSa on January 25, 2007. *See id.* PenSa had 30 days from this date, or until February 24, 2009, within which to respond. PenSa notified Bays Exploration of its willingness to participate in the Joey Well on February 28, 2007, four (4) days after its 30-day election period had expired. *See* Exhibit 16, PenSa's Notice of Election dated February 28, 2007. This election was not timely, and therefore was not effective to preserve PenSa's rights to participate in the Joey Well. *See Nearburg*, *supra*, 943 P.2d at 570 (attempted election made on the 41st day after receiving well proposal is ineffective even if the operator has not yet commenced the proposed operations).

PenSa's failure to timely respond to Bays Exploration's well proposal within the 30-day deadline established by the Treasure Valley JOA constituted an election not to

participate in the proposed operations.[3]  *Id.*; *see also* Ex. 12, Treasure Valley Joint Operating Agreement at p. 6, Article VI(B).  Therefore, there is no genuine issue of material fact that could support PenSa's Sixth Claim for Relief [Doc. No. 74 at p. 16], and summary judgment in favor of Plaintiffs on this cause of action is proper.

## II.   PENSA BREACHED THE JOAS BY FAILING TO PAY ITS PROPORTIONATE SHARE OF THE COSTS FOR WELLS IN WHICH IT DID PARTICIPATE

Since prior to the filing of the lawsuit and continuing throughout, PenSa has refused to pay its JIBs for certain oil and gas wells that are operated by Bays Exploration, and in which PenSa owns an interest.  As of the date of the most recent billing, PenSa owes more than $1.3 million in past-due JIBs.  *See* Exhibit 4, Ramsey Affidavit; Exhibit 21, Detail of Unpaid JIB Charges.  PenSa's refusal to pay its share of the joint interest billings for the wells in which it did participate constitutes an event of default under the applicable agreements, and has resulted in the suspension of PenSa's rights under those agreements as well as the filing of an Operator's lien that is valid and superior to PenSa's interest in the subject wells and properties.

---

[3] PenSa claims that its election to participate on the 34th day after the well proposal was received should be effective because, although the well proposal was faxed on Thursday, January 25, 2007, the mailed copy was allegedly not received until Monday, January 29, 2007.  However, the certified mail receipt from the United States Post Office indicates that the Well Proposal and AFE were delivered and signed for on January 27, 2009.  Moreover, the operating agreement clearly states that PenSa's 30-day election period begins to run at the time the well-proposal is "delivered," which may be evidenced by a facsimile transmission record showing that a transmission was made and that the transmission was good.  Therefore, PenSa's 30-day election period began to run on January 25, 2007, the date the on which the well proposal was "received" via fax.

After PenSa's unpaid JIBs remained unpaid for a period exceeding ninety (90) days, Bays Exploration delivered to PenSa the requisite Notices of Default.  These Notices of Default specified the default for each well, specified what action PenSa should take to clear the default, and further specified that PenSa's failure to cure the default would result in Bays Exploration's exercise of one or more of the remedies provided in the JOA.  PenSa's proffered expert witness, John R. Reeves, testified that the Notice of Default letters upon which Bays Exploration relies, those dated after December 1, 2008, are proper notice of default in compliance with the requirements in the applicable JOAs.  *See* Exhibit 23, Reeves Deposition at 347:21-348:22. Nevertheless, PenSa has totally failed and refused to cure the described defaults and/or otherwise pay any portion of the unpaid joint interest billings.

In light of PenSa's refusal to cure the defaults under each applicable JOA and/or otherwise pay the joint interest billings, Bays Exploration has notified PenSa that any and all rights of PenSa under each JOA are suspended. Such action is authorized by each of the JOAs for the wells in which PenSa is in default.  *See generally* Art. VII(D) at pp. 12-13 of the JOAs attached as Exhibits 3, 12, and 17-20.  The JOAs state that any party that fails to discharge any financial obligation under the agreement within the period required for such payment may have its rights suspended:

> Any party may deliver to the party in default a Notice of Default, which shall specify the default, specify the action to be taken to cure the default, and specify that failure to take such action will result in the exercise of one or more of the remedies provided in this Article.  If the default is not cured within thirty (30) days of the delivery of such Notice of Default, all of the rights of the defaulting party granted by this agreement may upon notice be suspended until the default is cured, . . .  The rights of the defaulting

24

> party that may be suspended hereunder at the election of the non-
> defaulting parties include, without limitation, the right to receive
> information as to any operation conducted hereunder during the period of
> such default, the right to elect to participate in an operation proposed under
> Article VI(B) of this agreement, the right to participate in an operation
> being conducted under this agreement even if the party has previously
> elected to participate in such operation, and the right to receive proceeds of
> production from any well subject to this agreement.

*See* Art. VII(D)(1) at pp. 12-13 of the JOAs attached as Exhibits 3, 12, and 17-20.

Therefore, Bays Exploration, as a non-defaulting party, was entitled to suspend PenSa's

rights under the relevant operating agreements as a result of PenSa's default under those

agreements.  There is no genuine issue of material fact that would oppose Plaintiffs'

Tenth Cause of Action [Doc. No. 72 at pp. 23-24], and summary judgment in favor of

Plaintiffs this cause of action is proper.

Furthermore, pursuant to each applicable JOA for the Bays Exploration operated

wells in which PenSa claims an interest, Bays Exploration claims an Operator's Lien in

an amount equal to the total amounts that PenSa is in default due to the non-payment of

its joint interest billings.  Copies of the Operator Liens filed by Bays Exploration are

attached as Exhibit 24.   Pursuant to express language of each JOA for the Bays

Exploration operated wells in which PenSa claims an interest, Bays Exploration has a

valid Operator's Lien in an amount equal to the total amounts that PenSa is in default

due to the non-payment of its joint interest billings.   *See* Art. VII(B) at p. 12 of the

JOAs attached as Exhibits 3, 12, and 17-20.

In Oklahoma, liens may be created by contract.  42 Okla. Stat. § 6.  Oklahoma

courts have expressly recognized that "[t]he A.A.P.L Model Form Operating

Agreements provide the operator with a contractual lien against the interest of the non-operator." *Amarex, Inc. v. El Paso Natural Gas Co.*, 772 P.2d 905, 908 (Okla. 1987). Bays Exploration's Operator's Liens are valid, enforceable, and superior to any right, title, or interest PenSa claims to hold in the subject wells and properties.

It is undisputed that PenSa has failed to pay its JIBs on certain wells as identified above.  The clear and unambiguous terms of the operating agreements provide Bays Exploration with an Operator's Lien in an amount equal to the total amounts that PenSa is in default due to the non-payment of its joint interest billings.  Therefore, there are no genuine issues of material fact that would oppose Plaintiffs' Seventh and Eighth Causes of Action [Doc. No. 72 at pp. 19-21], and summary judgment in favor of Plaintiffs on these causes of action is proper.

### III.   PENSA'S CLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING AND BREACH OF FIDUCIARY DUTY ARE NOT ACTIONABLE

PenSa claims that Bays Exploration has breached the covenant of good faith and fair dealing.  [Doc. No. 74 at p. 19.]  PenSa also claims that "under the various joint operating agreements entered into between Bays and PenSa, Bays Exploration owes a fiduciary duty to PenSa." [Doc. No. 74 at p. 20.]  However, this Court has found that a JOA does not create a special relationship between the operator and non-operator and does not give rise to an independent duty of good faith and fair dealing.  *Tenneco Oil Co. v. Bogert*, 630 F.Supp. 961, 968-69 (W.D. Okla. 1986) (applying Oklahoma law refusing to impose fiduciary duty on the operator because it was contrary to specific language in the JOA exactly the same in this case); *see also Connaghan v. Maxus*

*Exploration Co.*, 5 F.3d 1363, 1365 (10th Cir. 1993); *Davis v. TXO Prod. Corp.*, 929 F.2d 1515, 1519  (10th Cir. 1991) (duty of good faith and fair dealing not extended to these types of contractual relationships).  Further, in answering the analogous question of whether a joint operating agreement creates a "mining partnership" giving rise to fiduciary duty, the Oklahoma Supreme Court has held that the joint operating agreement, standing alone, does not create such a relationship.  *Sparks Bros. Drilling Co. v. Texas Moran Exploration Co.*, 829 P.2d 951, 953 (Okla. 1991); *see also* Ex. 23, Reeves Depo. at 320:22-325:18 (recognizing that current state of Oklahoma jurisprudence indicates that no fiduciary relationship is created by operating agreement under Oklahoma law).

In *E. Kuntz,* Law of Oil & Gas, at § 19A.6(c), the distinguished professor and renowned expert in this field notes the following:

> It is submitted that, in determining the nature of the relation created by a particular JOA, a search for cases in the particular state on the narrow subject of the relation to a JOA would not be as productive as research of local law on the subject of finality of the JOA or any other contract.  If it is final, the JOA will control the relation of the parties. (Emphasis added.)

The good professor then cites to *British American Oil Producing Co. v. Midway Oil Co.*, 82 P.2d 1049 (Okla. 1938), as proclaiming this case to express the seminal rule in Oklahoma that "where the business relationship between parties is purely contractual, based upon a written contract . . . the rights and liabilities of the parties are measured and fixed by the contract." *E. Kuntz*, *supra*.  In the *British American Oil* case the Oklahoma Supreme Court determined that where the business relationship between

27

competent parties is purely contractual, and complete as to detail and free from ambiguity, the rights and liabilities of the parties are measured and fixed by the contract in the absence of fraud, overreaching or other illegality in the contract. *See* 82 P.2d at 1057.

The JOAs do create a contractual relation between the operator and each non-operator. The JOAs in this case are all A.A.P.L. Model Form 610-1989 Joint Operating Agreements with the COPAS accounting procedures attached and incorporated. These agreements provide PenSa, as a non-operator, with the contractual right to challenge Bays Exploration's charges to the Joint Account, and provide a method to remedy any improper charges. "Breach of [these] duties under the JOA gives rise to a breach of contract claim, not one for breach of fiduciary duty." *Tarrant v. Capstone Oil & Gas Co.*, 178 P.3d 866, 870-71 (Okla. Civ. App. 2007); *see also Grynberg v. Dome Petroleum Corp.*, 599 N.W.2d 261, 268 (N.D. 1999) (contractual provisions in operating agreement regarding a working interest owner's right to challenge cost statements is dispositive and precludes a claim for breach of fiduciary duty).

In this case, the parties here mutually agreed to the JOA's as their contract of choice and rule of governance. Defendant attempts to impose duties and rights upon the Plaintiff outside the JOA which are impermissible as a matter of law. In Oklahoma, the JOA does not create a fiduciary duty owed by operator to non-operators. Summary judgment is therefore proper on PenSa's Eleventh and Thirteenth claims for relief.

Respectfully submitted,


s/David A. Elder
William A. Johnson, OBA No. 4730
David A. Elder, OBA No. 20687
HARTZOG CONGER CASON & NEVILLE
201 Robert S. Kerr Avenue
1600 Bank of Oklahoma Plaza
Oklahoma City, OK 73102
Telephone: (405) 235-7000
Facsimile: (405) 996-3403
bjohnson@hartzoglaw.com
delder@hartzoglaw.com

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 16th day of April, 2010, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing.  Based on the electronic records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Gregg R. Renegar
Kornfeld, Franklin, Renegar & Randall
The Renegar Building
2964 Via Esperanza
Edmond, OK  73013

Thomas J. Kimmell
Zarlengo & Kimmell, PC
1775 Sherman St., Suite 1375
Denver, CO  80203

s/David A. Elder
David A. Elde