**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

BAYS EXPLORATION, INC., a Texas )
  corporation; BAYS ENERGY PARTNERS )
  2007 L.P., a Texas limited partnership, )
                                     )
       Plaintiffs, )
                                       )
vs.                                   )        NO. CIV-07-754-D
                                       )
PENSA, INC., a Colorado corporation, )
                                       )
       Defendant. )

## ORDER

Before the Court is the motion [ Doc. No. 186] of Plaintiff Bays Energy Partners 2007, L.P. ("Bays Energy") for partial summary judgment. Defendant PenSa, Inc. ("PenSa") timely responded, and Bays Energy filed a reply.

Background:

In this action, Bays Energy and Bays Exploration, Inc. ("Bays") assert against PenSa ten claims for relief arising from the drilling and operation of several jointly owned Oklahoma oil and gas wells for which Bays is the operator and PenSa is a working interest owner. Some of these claims seek declaratory judgment regarding the effect of certain provisions of letter agreements and joint operating agreements executed by Bays and PenSa from 2001 through 2005; other claims seek recovery of amounts allegedly owed by PenSa as a result of those agreements. Bays and Bays Energy also request declaratory judgment regarding the impact of certain joint operating agreement provisions on the rights and obligations of Bays, Bays Energy, and PenSa in light of a February 22, 2007 Purchase and Sale Agreement ("2007 Agreement") in which Bays sold certain interests in the subject properties to Bays Energy, a Texas limited partnership for which Bays is the general partner. In response to the foregoing claims, PenSa asserts fifteen counterclaims for money damages and/or

declaratory relief against Bays and Bays Energy.

As explained in the February 11, 2011 Order [Doc. No. 217] addressing Bays's separate motion for partial summary judgment, some of the claims and counterclaims involve the parties' disputes regarding Bays's rights and obligations as operator of the jointly owned wells and properties and PenSa's rights and obligations as a non-operating working interest owner; those disputes were addressed in the Court's ruling on Bays's motion for partial summary judgment, and are not the subject of Bays Energy's motion. Instead, Bays Energy's motion focuses on the claims and counterclaims involving the parties' additional dispute regarding the 2007 Agreement. With respect to that dispute, Bays and Bays Energy seek declaratory judgments that, in connection with the 2007 Agreement and the proposed sale to Bays Energy, Bays complied with applicable joint operating agreement provisions governing the parties' respective rights and obligations when an operator intends to sell its interests in properties covered by that joint operating agreement. PenSa contends Bays did not comply with those provisions; it asserts counterclaims seeking declaratory judgments that Bays breached several joint operating agreement provisions in connection with the sale to Bays Energy; PenSa seeks equitable relief and/or money damages. Bays Energy now seeks judgment on its claims and PenSa's counterclaims based on this dispute.

Summary judgment standards:

Summary judgment is proper where the undisputed material facts establish that a party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A material fact is one which may affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). To dispute a material fact, the non-moving party must offer more than a "mere scintilla" of evidence; the evidence must be such

that "a reasonable jury could return a verdict" in its favor. *Id.* "[T]he requirement that a dispute be 'genuine' means simply that there must be more than 'some metaphysical doubt as to the material facts.'" *Anderson*, 477 U.S. at 260-261(quoting *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The facts and reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party. *MacKenzie v. City & County of Denver*, 414 F. 3d 1266, 1273 (10th Cir. 2005).

If the undisputed facts establish that a party cannot prove an essential element of a cause of action, the movant is entitled to judgment on that cause of action. *Celotex*, 477 U.S. at 322. However, the party seeking summary judgment need not disprove the opposing party's claim; it must only point to "a lack of evidence" on an essential element of that claim. *United States v. AMR Corp.*, 335 F. 3d 1109, 1113 (10th Cir. 2003); *Adler v. Wal-Mart Stores, Inc.*, 144 F. 3d 664, 671 (10th Cir. 1998). The burden then shifts to the claimant to go beyond the pleadings and present facts, admissible in evidence, from which a rational trier of fact could find in its favor; conclusory arguments are insufficient, as the facts must be supported by affidavits, deposition transcripts, or specific exhibits incorporated therein, and it is not the Court's responsibility to attempt to find evidence in the record which could support a claimant's position. *Adler,* 144 F. 3d at 671-72.

Summary judgment may be granted on grounds other than those raised in the motion before the Court if the facts were fully developed showing entitlement to judgment as a matter of law and there is no procedural prejudice to the losing party. *See, e.g., Setliff v. Memorial Hosp. of Sheridan County*, 850 F.2d 1384 (10th Cir. 1988).

Where, as in this case, a summary judgment motion relies on the interpretation of a contract, summary adjudication may be proper if the contract is unambiguous, because the interpretation of

a contract presents a question of law. *See, e.g., Edwards v. Doe*, 331 F. App'x 563, 571 (10th Cir. 2009) (unpublished opinion) (citing *May v. Mid-Century Ins. Co.*, 151 P. 3d 132, 140 (Okla. 2006)). Even if a contract is determined to be ambiguous, if the ambiguity arises by reason of the language used (patent ambiguity), as opposed to by reason of extrinsic facts (latent ambiguity), construction of the contract remains a question of law for the Court. *Walker v. Telex Corporation*, 583 P. 2d 482, 485 (Okla. 1978); *Paclawski v. Bristol Laboratories, Inc.*, 425 P. 2d 452, 455 (Okla. 1967); *Shepherd v. French*, 612 P. 2d 727, 729 (Okla. Civ. App. 1980) ("Construction of an ambiguous contract is a question of law for the court where the ambiguity can be clarified by reference to other parts of the contract or where the ambiguity arises by reason of the language used and not because of extrinsic facts.").

<u>The issues presented and the record before the Court:</u>

The parties fully briefed the issues raised by Bays Energy's motion, and they submit an extensive record for the Court's review. Although some facts are disputed, the arguments focus primarily on the parties' conflicting interpretations of the Joint Operating Agreement ("JOA") provisions applicable to a prospective sale of the operator's interests. More specifically, the issues raised include whether certain JOA provisions apply to the 2007 sale by Bays to Bays Energy and, if so, whether those provisions were breached by Bays and/or Bays Energy.

It is not disputed that, under the terms of the 2007 Agreement, Bays agreed to sell to Bays Energy the majority of Bays's right, title and interest in numerous oil and gas properties, including the Golden Trend, Treasure Valley, and Treasure Valley North prospects, which are covered by JOAs executed by Bays and PenSa. Bays Energy was not a party to the JOAs. The 2007 Agreement also provided that Bays would continue to be the operator of the wells; Bays also retained an interest

4

in certain properties[1].

The parties also agree that each applicable JOA contains specific provisions regarding the parties' respective rights and obligations when the operator proposes a sale of its interests in the properties covered by the JOA. The parties' dispute involves three JOA provisions: the preferential right to purchase, the preferential right to sell, and the maintenance of uniform interest provisions. Those provisions and the parties' respective contentions regarding each are summarized below.

The preferential right to purchase provision:

The parties agree that the JOA for the J. A. Payne No. 1 well and a separate JOA for the Treasure Valley North prospect each contain a preferential right to purchase ("PRP") provision. The PRP clause is contained in Article VIII.F of these JOAs, copies of which are submitted as Bays Energy Exhibits 5 and 7, respectively. According to the PRP provision, if Bays, as operator, proposes a sale of its interest in the properties governed by the JOA to a third party, PenSa, as a non-operator, has the option to purchase that interest on the same terms and conditions as the potential third-party purchaser. The PRP clause also requires PenSa to make a written election to purchase within ten days of receiving notice of the proposed sale.

PenSa concedes that it received a written notice in March of 2007 of Bays's proposed sale to Bays Energy, and that it did not exercise its election to purchase the properties under the applicable provisions. However, PenSa contends it was not bound by the PRP election deadline because the evidence shows Bays did not furnish all information required to satisfy the PRP notice requirements; PenSa also contends the evidence shows Bays did not provide information on all of

---

[1]Bays contends that it retained interests in all of the subject properties and wells by virtue of its status as general partner of Bays Energy. However, PenSa argues that Bays retained only its ownership in the Woodford formation, and did not retain title to any other interests.

the interests it proposed to sell to Bays Energy. PenSa argues that, as a result, the notice was deficient; its counterclaim asks the Court to direct Bays and Bays Energy to issue a new notice complying with the PRP provision in the JOAs and to allow PenSa to exercise its option to purchase at this time. PenSa also contends the failure to provide proper notice is a breach of the JOA for which it is entitled to recover damages.

Bays and Bays Energy seek a declaratory judgment that Bays complied with the PRP requirements, that PenSa did not timely exercise its preferential rights to purchase, and that it has thus waived those rights.

<u>The preferential right to sell provision:</u>

The parties agree that certain JOAs for the subject properties contain a provision entitled "Non-Operator – Sale of Interest Option," which the parties describe as a "preferential right to sell" provision. The provision is contained in the JOAs for the R. C. Stephens No. 1 well, the Vicki Kay No. 1 well, the Wildman No. 1 well, the J. A. Payne No. 1 well, and the Treasure Valley North properties. Copies of these JOAs are submitted as Bays Energy Exhibits 2, 3, 4, 5, and 7. Although the exact language of the provisions is not identical in the five JOAs, each generally provides that, if the operator sells its interest, the non-operator has the option, but not the obligation, to sell its working interest in the property being sold by the operator on the same terms and conditions as apply to the operator's sale of its interest.

Bays Energy contends the evidence establishes the right to sell provision was not triggered by Bays's sale to Bays Energy because it applies only if, in connection with its sale of interests, Bays also decides to "leave the project." Because Bays remained as operator of the properties covered by the sale and because it is the general partner of Bays Energy, this provision, Bays Energy

contends, is inapplicable. Bays Energy further argues the right to sell provision is not binding on it because it was not a party to the JOAs; it also contends that, to the extent the right to sell provision precludes Bays from selling its leasehold interests in the subject properties, it constitutes an unreasonable restraint on alienation and is void under Oklahoma law. PenSa disputes these contentions, arguing the provision applies to Bays's sale to Bays Energy, and seeking a declaratory judgment that the provision was breached.

The maintenance of uniform interest provision:

The parties further agree that each of the foregoing JOAs also contains a "maintenance of uniform interest"("MUI") provision. *See* JOAs Article VIII.D, Bays Energy Exs. 2, 3, 4, 5, and 7. That provision applies to both Bays, as operator, and to PenSa, as non-operator; it provides that neither party may sell, encumber, transfer, or make other disposition of its interests in the oil and gas leases or in wells, equipment and production covered by such leases unless such disposition covers either (1) the party's entire interest in all oil and gas leases, oil and gas interests, wells, equipment and production, or (2) an equal undivided percent of the party's present interest in those items.

In a counterclaim, PenSa alleges the 2007 sale by Bays to Bays Energy violates the MUI provision because the sale excluded Bays's interest in the Woodford formation. PenSa seeks money damages resulting from this alleged breach of the JOA by Bays; alternatively, it seeks a declaratory judgment "or quiet title order" voiding any assignment made by Bays to Bays Energy in violation of the MUI provision.

Bays Energy seeks summary judgment on this counterclaim, arguing the evidence establishes the MUI provision is inapplicable to the subject sale, as Bays retained an interest in all subject

properties because it is the general partner of Bays Energy and because it continued as operator of the properties. Alternatively, Bays Energy argues that, even if the MUI provision applies, PenSa cannot show it has been damaged by the alleged breach. In addition, Bays Energy contends the undisputed evidence shows that, prior to the 2007 sale, PenSa breached this provision by selling some of its interests in the covered properties to third parties.

Bays Energy's motion for partial summary judgment asks the Court to rule on the foregoing claims and counterclaims by concluding, as a matter of law, that:

1) Bays and Bays Energy did not violate the PRP provisions of the applicable JOAs; alternatively, PenSa cannot recover for any alleged breach of the provisions based on the doctrine of waiver, or because of its financial inability to purchase the subject interests under the same terms and conditions as Bays Energy;

2) The preferential right to sell provisions of the applicable JOAs were not triggered by Bays's sale to Bays Energy and are not binding on Bays Energy; alternatively, those provisions constitute an unreasonable restraint on alienation; and

3) PenSa cannot recover for any alleged breach of the MUI provisions of the applicable JOAs because it has failed to show any damages caused by such alleged breach; alternatively, PenSa previously breached these same provisions and is thus barred from recovery.

PenSa contends Bays Energy is not entitled to judgment on any of these claims, arguing that its interpretation of the application and scope of the provisions establishes that Bays and/or Bays Energy breached those provisions. At a minimum, it contends material facts preclude summary judgment.[2]

---

[2]To the extent the record reflects disputed material facts, those facts are discussed in the Application.

Application:

The record establishes that the parties' dispute focuses on the interpretation of their rights and obligations under the JOAs; they acknowledge that joint operating agreements are contracts, and their terms and provisions are analyzed according to the rules governing contract interpretation. They also agree that Oklahoma law governs this dispute; accordingly, the Court will apply the Oklahoma rules of contract interpretation.

Pursuant to those rules, the construction of an unambiguous contract is a matter of law for the Court. *Pitco Production Company v. Chaparral Energy, Inc.*, 63 P.3d 541, 545 (Okla. 2003); *Walker v. Telex Corporation*, 583 P.2d 482, 485 (Okla. 1978). Moreover, whether a contract is ambiguous and requires extrinsic evidence to clarify the ambiguity also presents a question of law for the Court. *Pitco Production Company*, 63 P.3d at 545. The determination of whether a contract is ambiguous is made only *after* application of the pertinent rules of contract construction. *State ex rel. Commissioners of Land Office v. Butler*, 753 P.2d 1334, 1336-37 (Okla. 1987), *cert. denied*, 488 U.S. 993 (1988).

Oklahoma's statutory rules of construction establish that the language of a contract governs its interpretation, if that language is clear and explicit and does not involve an absurdity. Okla. Stat. tit. 15 §§ 154, 155. The words of a contract are to be given their ordinary and popular meaning. Okla. Stat. tit. 15 § 160. In addition, a contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates. Okla. Stat. tit. 15 § 163. A contract is to be taken as a whole, giving effect to every part if reasonably practicable, each clause helping to interpret the others. Okla. Stat. tit. 15 § 157. Thus, when interpreting a contract, a court must consider the entire contract, "without narrowly concentrating upon some clause or language taken

out of context." *Mercury Investment Company v. Woolworth Company*, 706 P.2d 523, 539 (Okla. 1985). Furthermore, a contract must be interpreted in a manner that will make it operative, definite, reasonable, and capable of being carried into effect. Okla. Stat. tit. 15 § 159.

In this case, the parties do not contend that the challenged JOA provisions are ambiguous. Although they offer conflicting interpretations of some portions of those provisions, that conflict alone does not render the provisions ambiguous. Under Oklahoma law, "the mere fact that the parties disagree about the meaning of a contract or argue for a different construction does not necessarily make the agreement ambiguous." *Gamble, Simmons & Co. v. Kerr-McGee Corp.*, 175 F. 3d 762, 767 (10th Cir. 1999). Accordingly, the Court will apply the Oklahoma rules of contract construction to interpret the challenged provisions and examine the parties' arguments regarding the application of those provisions to the facts to determine whether summary judgment may properly be granted.

The PRP provisions:

The parties' dispute regarding their respective rights and obligations under the PRP provisions reflects that they disagree regarding the nature and scope of the information required for an effective notice of a proposed sale by Bays as the operator of the properties. The provision at issue is set forth in Article VIII.F of each of the JOAs covering the properties to be sold. With respect to the written notice requirement, each JOA provides:

> Should any party desire to sell all or any part of its interests under this agreement, or its rights and interests in the contract Area, it shall promptly give written notice to the other parties, with full information concerning its proposed disposition, which shall include the name and address of the prospective transferee (who must be ready, willing and able to purchase), the purchase price, a legal description sufficient to identify the property, and all other terms of the offer.

Treasure Valley North JOA[3], Article VIII.F, Bays Energy Ex. 7, p. 15.  The parties do not contend this language is ambiguous, and the Court finds that it is clear and unambiguous.  Thus, for Bays's notices to comply, each  had to contain: 1) the name and address of the prospective transferee; 2) the purchase price; 3) a legal description sufficient to identify the property; and 4) all other terms of the offer.

It is not disputed that, on March 14, 2007,  Bays sent to PenSa three notice letters, disclosing, respectively, its intent to sell to Bays Energy its interests in the Laticia Lee No. 1, the Treasure Valley North No. 1, and the J. A. Payne No. 1 wells or locations.  Bays Energy Ex. 9.  Each letter advised PenSa that Bays intended to sell its interest in the subject well or location and that the prospective purchaser was Bays Energy.  Each letter also explained that Bays Energy was a limited partnership formed by Bays and a third party; it advised that Bays was general partner of Bays Energy.  The letters further stated that Bays Energy was "ready, willing and financially capable of consummating the purchase."

---

[3]The parties agree that the other JOAs at issue contain an identical provision.  The entire provision states:

> Should any party desire to sell all or any part of its interests under this agreement, or its rights and interests in the contract Area, it shall promptly give written notice to the other parties, with full information concerning its proposed disposition, which shall include the name and address of the prospective transferee (who must be ready, willing and able to purchase), the purchase price, a legal description sufficient to identify the property, and all other terms of the offer.  The other parties shall then have an optional prior right, for a period of ten (10) days after the notice is delivered, to purchase for the stated consideration on the same terms and conditions the interest which the other party proposes to sell; and, if this optional right is exercised, the purchasing parties shall share the purchased interest in the proportions that the interest of each bears to the total interest of all purchasing parties.  However, there shall be no preferential right to purchase in those cases where any party wishes to mortgage its interests, or to transfer title to its interests to its mortgagee in lieu of or pursuant to foreclosure of a mortgage of its interests, or to dispose of its interests by merger, reorganization, consolidation, or by sale of all or substantially all of its Oil and Gas assets to any party, or by transfer of its interests to a subsidiary or parent company or to a subsidiary of a parent company, or to any company in which such party owns a majority of the stock.

Each letter identified the subject property to be sold, referenced the JOA covering that property, and disclosed the purchase price allocated to the identified property. In addition, Bays also submitted with the notice letters to PenSa a copy of the Purchase and Sale Agreement containing the details of the proposed sale from Bays to Bays Energy.

The notice letters also advised PenSa of its preferential right to purchase the properties on the same terms and conditions applicable to Bays Energy, and reminded it of the express provision in the PRP that PenSa was required to exercise its right to purchase within ten days of its receipt of a notice letter.

Upon receipt of the notice letters, PenSa complained that they were deficient because they did not contain a sufficient legal description of the subject property. Copies of PenSa's March 23, 2007 letters to Bays are submitted as Bays Energy Exhibit 10 and PenSa Exhibit 4. The Court agrees that the text of the March 14, 2007 notice letters does not contain a detailed legal description of the subject property; however, each references the JOA covering that property, and each JOA contains a detailed legal description of the property it covers.

Furthermore, it is not disputed that, in response to PenSa's complaint about this omission in the letters, Bays submitted to PenSa the complete legal descriptions of each of the subject properties identified in its March 14 notice letters. *See* Bays Energy Ex. 11. It is also not disputed that, when it did so, it extended the notice date, providing PenSa an additional ten days after its receipt of the additional information in which to elect to purchase the properties. *Id.* The parties agree that Bays extended the deadline to April 9, 2007.

PenSa agrees that, in addition to the supplemental information and extended deadline, Bays offered PenSa the opportunity to review additional information regarding the prospective sale at

Bays's Oklahoma City office, and PenSa declined that offer. PenSa contends this offer did not comply with the PRP notice provisions, which require "full information" to be included in the notice letter and not at a later date.

PenSa does not dispute that it did not exercise its election by the April 9, 2007 deadline. Further, PenSa concedes that, in response to the notice provided by Bays, it affirmatively elected *not* to exercise its PRP rights as to Bays's interest in the J. A. Payne No. 1 well; it notified Bays of that decision in an April 12, 2007 letter. *See* Bays Energy Ex. 12.

With respect to the other properties identified in the notice letters, PenSa contends it was not obligated to meet the April 9, 2007 deadline because it had not received all information required by the PRP provision. Furthermore, PenSa argues it ultimately did elect to exercise its PRP option with regard to the other properties and that it did so via a June 11, 2007 letter to Bays. PenSa Ex. 5. In that letter, PenSa reiterated its belief that Bays had not yet provided all information required under the PRP provision but added that, upon confirmation by Bays of the purchase price for the Treasure Valley North Contract Area, PenSa "will waive the defective notice and elect to exercise our preferential right to the entire Contract Area." *Id.* Bays Energy contends this election is deficient because it was not timely exercised.

In its counterclaim and in response to Bays Energy's motion, PenSa persists in its contention that Bays did not comply with the PRP provision because it did not provide "full information" regarding the prospective sale to Bays Energy. However, PenSa does not identify the additional information it contends was required by the PRP provision, nor does it offer authority to explain what it believes would have constituted "full information."

The parties do not cite any Oklahoma authority interpreting a preferential purchase clause

and its requirement of "full information."  As Bays Energy points out, a Texas court has addressed that question. *Fasken Land and Minerals, Ltd. v. Occidental Permian Ltd.*, 225 S. W. 3d 577 ( Tex. App. - El Paso 2005).  In *Fasken*, the court  interpreted a PRP provision similar to the one in this case; the issue was what constituted "full information" required to satisfy the PRP notice requirement.  In *Fasken*, the PRP provision required the prospective seller of its interests to provide "full information" in its notice, and it listed four items of information essentially identical to those in the PRP provision at issue in this case. *Id.* at 589.  The non-operator complained the operator's PRP notice was deficient for lack of "full information" because it did not specify how the allocation of the purchase price would be calculated for each property.  The court rejected that contention, and held that the items listed in the PRP provision defined "what would constitute full information concerning the proposed transaction," thereby limiting the required information to the four items listed in the provision.  *Fasken*, 225 S. W. 3d at 590.

Although *Fasken* is not binding, the Court finds it persuasive, and PenSa offers no Oklahoma authority providing a contrary interpretation or conclusion.  Furthermore, the *Fasken* court's analysis is consistent with the Oklahoma rules of contract construction requiring the Court to apply the plain language of the contract.  Here, the plain language of the PRP provision in the JOAs executed by Bays and PenSa lists four specific items to be provided to the non-operator in the notice of prospective sale.  No other JOA provision requires additional information to satisfy the "full information" requirement.  The Court concludes that providing the listed items is sufficient to provide "full information" and comply with the notice requirement.

In this case, the record reflects that Bays provided to PenSa the four items listed in the PRP provisions covering the properties in question.  While the full legal descriptions were not furnished

in its initial letter, Bays supplemented its notice by providing that information. Although PenSa contends the omission of the legal description from the initial notice letters rendered the notices fatally deficient, the Court disagrees. The initial letters referenced each applicable JOA which, in turn, contained detailed legal descriptions. In any event, Bays cured any deficiency in the initial notice letters by providing detailed legal descriptions upon PenSa's request and extending the notice period. By allowing PenSa an additional ten days from the date of its receipt of the legal descriptions in which to exercise its right to purchase, Bays effectively cured any detriment that was caused by failing to provide the information in the initial letter. Had it not extended the time period, PenSa's argument might be more persuasive; however, such is not the state of the facts.

Although PenSa argues that providing supplemental information does not comply with the PRP provision and that all required information must be included in the initial notice letters, it offers no legal authority and cites no JOA provision to support that contention. PenSa also offers no authority to support its contention that the extended time period for its election, contained in the supplemental notice, did not commence upon its receipt of that notice and supplemental information, nor does it point to any provision in the JOAs to support its argument.

Furthermore, the record reflects that, notwithstanding the omission of allegedly necessary but unidentified additional information, PenSa attempted to elect to participate in the Treasure Valley North properties in June of 2007, approximately two months after the expiration of the April 9, 2007 deadline. *See* PenSa Ex. 5. It did so despite its continued position that Bays had not, at that time, provided all information required by the PRP provision.

The Court concludes that the notice letters provided by Bays, supplemented by its submission of legal descriptions and the extension of the election period, satisfied the notice

requirements in the applicable PRP provisions. Thus, to the extent PenSa's counterclaim is based on a breach of those provisions because Bays did not provide all information required by the PRP provision, Bays Energy is entitled to summary judgment.

PenSa also argues, however, that the notices were deficient because they did not provide the four listed items in the PRP with regard to all wells and interests being sold by Bays to Bays Energy. Instead, the notices were limited to the prospective sale of Bays's interests in the Laticia Lee No. 1, the Treasure Valley North No. 1, and the J. A. Payne No. 1 wells or locations. PenSa contends that it retained a working interest in other wells which Bays intended to sell to Bays Energy. In its response, Bays Energy reiterates Bays's argument in support of its separate partial summary judgment motion that PenSa failed to timely elect to participate in some of the properties; Bays Energy states that the notices provided the required information only as to the wells in which PenSa had elected to participate, and omitted the information regarding those in which PenSa had not timely elected to participate.

In the separate Order [Doc. No. 217] granting in part and denying in part Bays's motion for partial summary judgment, the Court held the undisputed material facts establish that PenSa failed to elect to participate in the Brinlee Ann Marie No. 1-26, the Wildhorse No. 1-26, the Sandra Kay No. 1-26, the Maria No. 1-26, and the Konlee Jae No. 2-35 (later renamed the Joey No. 1-35) wells. The election periods for PenSa's participation in these five wells expired in 2006; the notices regarding the proposed sale to Bays Energy were issued in March of 2007. Accordingly, by the time of the notices, PenSa had relinquished its rights in those wells. Bays Energy is correct that the PRP provisions did not apply to those wells. Thus, the omission of the wells from Bays's notices to PenSa does not preclude granting Bays Energy's motion as to the propriety of Bays's notice letters

and PenSa's failure to elect to purchase the properties[4].

Applying the governing law and the rules of contract construction to the undisputed material facts in the record, the Court concludes that Bays Energy is entitled to judgment on its claim that the PRP provisions were not violated in this case. Further, it is entitled to judgment on PenSa's counterclaim based on the alleged violation of these provisions.

Preferential right to sell provisions:

PenSa also asserts in a counterclaim that Bays's sale to Bays Energy constitutes a breach of the preferential right to sell provision in the JOAs. As noted, *supra*, the parties do not dispute that the JOAs for the R. C. Stephens, Vicki Kay, Wildman, J. A. Payne, and Treasure Valley North each contain a preferential right to sell provision. Copies of these JOAs are submitted as Bays Energy Exhibits 2, 3, 4, 5, and 7. Although the exact language of the provisions is not identical in the five JOAs, each generally provides that, if the operator sells its interest, the non-operator has the option, but not the obligation, to sell its working interest in the property being sold by the operator on the same terms and conditions as apply to the operator's sale of its interest. Both parties acknowledge that the provision is unique to the JOAs at issue, and is not part of the model form operating agreement.

The Treasure Valley North JOA also provides that "[t]he intent of this provision is to provide a means" for non-operators "to leave the project at the point in time the Operator leaves the project." *See* Treasure Valley North JOA Art. XVI. K, Bays Energy Ex. 7 at p. 17.2. Although this language differs somewhat from the text of Article XVI. K of the R. C. Stephens, Vicki Kay, Wildman, and

---

[4]Having reached this conclusion, the Court need not address Bays Energy's alternative arguments that PenSa waived its rights by failing to review the information provided to it and that it lacked the financial resources to exercise its rights under the PRP provisions.

J. A. Payne JOAs,  those JOAs also provide that the "intent of this provision" is to provide a means for a non-operator to leave the project "at the point in time" when the operator "may sell out of the project."  *See* Bays Energy Ex. 2 at p. 17.2; Ex. 3 at p. 17.2; Ex. 4 at p. 17.3 and Ex. 5 at p. 17.2.

PenSa argues this provision was violated because Bays and Bays Energy did not give PenSa the option of selling its interests in the subject wells on the same terms and conditions as those governing Bays's sale to Bays Energy.   Bays Energy argues that this provision was not triggered by the sale because the parties' intent regarding this provision is that it applies only when the operator leaves the project or sells out of the project, and Bays continued as operator after the sale. It further argues that the preferential right to sell provision is not binding on Bays Energy because it is not a party to the JOAs containing that provision.   Additionally, it argues the clause cannot be enforced against Bays because to do so would constitute an unlawful restraint on Bays's right of alienation under Oklahoma law.

With respect to Bays Energy's argument that the parties intended the preferential right to sell provision to apply only to sales in which the operator leaves the project,  PenSa correctly points out that this argument appears contrary to the argument, asserted by Bays in its partial summary judgment motion, that statements of precatory intent cannot alter the provisions of the parties' contract.  A "mere recital of the intention of the parties" may be disregarded where the operative clauses are clear and unambiguous. *Thomas v. Dancer*, 264 P. 2d 714, 717-18 (Okla. 1953).  The Court agrees that the statements of intent in the preferential right to purchase provisions do not alter the clear terms of those provisions.  Moreover, the language of the provision in the Treasure Valley North JOA expressly provides that the option arises "[i]n the event that Operator sells all *or substantially all* of its working interest...." Treasure Valley North JOA Art. XVI. K, Bays Energy

Ex. 7 at p. 17.2 (emphasis added).  Further, as discussed more fully *infra*, this provision is properly read in conjunction with the PRP provision, which is likewise triggered by the proposed sale of all, or substantially all, of the operator's interest.

Bays Energy also argues that the right to sell provision cannot legally bind Bays because its enforcement would constitute an unreasonable restraint on its right of alienation.  As Bays Energy notes, Oklahoma has recognized that an oil and gas leasehold interest constitutes an estate in real property the alienation of which may not be unreasonably restrained.  *Shields v. Moffitt,* 683 P. 2d 530, 532-33 (Okla. 1984).  Under Oklahoma law, a restraint on alienation is a restriction that purports to make a vested interest in real property inalienable.  *Lohman v. Adams*, 540 P. 2d 552, 555 (Okla. 1975).  Two forms of restraints on alienation have been recognized: 1) a "disabling" restraint, which attempts to withhold the right or power to alienate, and 2) a "forfeiture" restraint, which results in forfeiture of the interest if there is any attempted conveyance of that interest.  *Id.*

Bays Energy argues that enforcement of the right to sell provision in the JOAs would constitute a disabling unreasonable restraint on Bays's right to freely convey its interests in the properties covered by the JOAs.  According to Bays Energy, adopting PenSa's interpretation of the provision would mean that, if PenSa elected to sell its interests, a third party could not purchase Bays's interests unless it also purchased PenSa's interests.  The effect, according to Bays Energy, is to unreasonably restrict Bays's ability to sell its interests.

Both parties acknowledge the Oklahoma Supreme Court has held that a preferential right to purchase provision in a standard form model operating agreement does not constitute an unreasonable restraint on alienation.  *Producers Oil Company v. Gore*, 610 P. 2d 722 (Okla. 1980). Oklahoma courts have not, however, considered whether a preferential right to sell would result in

the same holding. Absent such authority, Bays Energy does not present any persuasive argument that the Court should treat the preferential right to sell provision differently than a preferential right to purchase with respect to whether it is an unreasonable restraint on alienation.

Bays Energy further argues that it is not a party to the JOAs, and contracts are binding only upon the parties thereto. *See, e.g., Drummond v. Johnson*, 643 P. 2d 634, 639 (Okla. 1982). Nor, it contends, is a non-consenting successor in interest to a contract bound by the contract's provisions. *See, e.g., John Wiley & Sons, Inc. v. Livingston*, 376 U. S. 543, 550 (1964); *Berrien v. Van Vuuren*, 280 F. App'x 762, 767 (10th Cir. 2008) (unpublished opinion). Thus, Bays Energy argues, PenSa cannot prevail on a claim that Bays Energy breached the preferential right to sell provision. After the consummation of the sale to Bays Energy, Bays continued as operator of the properties; Bays Energy is not the operator. Thus, the Court agrees that any obligations of the operator under the JOAs continue to be the obligations of Bays and not of Bays Energy. PenSa offers no legal authority directly supporting a contention that Bays Energy is liable for a purported violation of the right to sell provisions. However, as discussed below, apart from the question of the scope and effect of the preferential right to sell provision, there is a more fundamental flaw in PenSa's position: it did not affirmatively exercise the option.

In focusing on the effect of the provision, Bays Energy asserts that, even if the preferential right to sell provision applies, it is limited to merely granting PenSa the right to offer its interests for sale to the prospective purchaser of Bays's interests. The Court notes that PenSa cites no language in the provision that would *obligate* the purchaser, Bays Energy, to purchase PenSa's interests if they had been offered for sale. However, the scope and effect of the preferential right to sell is a question that would only be presented if PenSa *had exercised* the option. But, there is

no indication in the record of which the Court has been made aware that PenSa ever contemporaneously asserted a desire or intent to sell its interests pursuant to the right to sell provision.

In order to address whether PenSa timely asserted its preferential right to sell, the Court must first consider the language of the provisions in question. The Court notes that the parties do not contend the preferential right to sell provisions are ambiguous; however, the provisions are not models of clarity.[5] Although the preferential right to sell provision is not located in close proximity to the PRP provision within the JOAs (the preferential right to sell is in Article XVI, Other Provisions), PenSa suggests – and the Court agrees – that in light of the "comparable nature of these rights," the two provisions should be construed together. *See* PenSa Response, p. 9. Indeed, Oklahoma's rules of contract construction require that a contract is to be taken as a whole, giving effect to every part if reasonably practicable, each clause helping to interpret the others. Okla. Stat. tit. 15 § 157. Moreover, a contract must be interpreted in a manner that will make it operative,

---

[5]As representative examples, the provisions from the Treasure Valley North JOA and R. C. Stephens JOA state, respectively, as follows:

> In the event that Operator sells all or substantially all of its working interests in the Contract Area or in any of the wells subject to this Operating Agreement, then Non-Operator shall have the option, but not the obligation to likewise sell its working interest in the property being sold by Operator on the same terms and conditions as the Operator. The intent of this provision is to provide a means for Non-Operators to leave the project at the point in time the Operator leaves the project.

Article XVI.K, Bays Energy Ex. 7.

> Non-Operator will have the option, but not the obligation to sell its working interest in any property by this agreement under the terms and conditions as the Operator. The intent of this provision is to provide a means for Non-Operator to leave the project at the point in time the Operator may sell out of the project.

Article XVI.K, Bays Energy Ex. 2.

definite, reasonable, and capable of being carried into effect. Okla. Stat. tit. 15 § 159.

The PRP provides that the option it grants must be exercised within ten days of receipt of notice of an intent to sell. The provision speaks of "an optional *prior* right" to purchase the offered interest on the same terms as the proposed sale. *See supra,* p. 11, n. 3 (emphasis added). It is obvious from the PRP language, and also self-evident, that even if the ten-day time period were not expressly set forth, under no circumstances could the option survive beyond the closing of the sale which was the subject of the notice. Thus, although the preferential right to sell provisions do not also contain a time period in which the option must be exercised, at the very latest such a right would by necessity have to be exercised before the sale by the operator were consummated. Otherwise, the provision would be nonsensical in a commercial setting.[6]

Because the PRP and the preferential right to sell provisions are clearly related and should be taken together, it seems most appropriate to apply the ten-day time period as the logical time limit to exercise a right to sell under the preferential right to sell clause. However, it is not necessary for the Court to make that determination here, because PenSa does not point the Court to any evidence in the record indicating it ever affirmatively attempted to exercise that right, and certainly did not do so before the sale between Bays and Bays Energy was completed.[7] PenSa seems to argue that Bays and/or Bays Energy were required to take some type of action, or provide some kind of

---

[6]For instance, accepting *arguendo* PenSa's position that the clause, even now, obligates Bays Energy to purchase PenSa's interest on the same terms as its purchase of Bays's interest, it would be virtually impossible for the purchaser to arrange financing, enter into binding contractual documents, and consummate the deal without knowing in advance of closing what its total financial and purchasing obligations would be. An interpretation of the provision that allows for an open-ended option period would involve an absurdity.

[7]Moreover, given PenSa's position that it ultimately attempted to exercise its PRP option in connection with the Treasure Valley North properties, a contention that it also sought to sell its interest would be internally inconsistent. Although there are indications in the record that PenSa communicated to Bays it was *evaluating* the option to sell, an affirmative exercise of the option did not follow.

additional notice, in order to extend to it and, thereby, activate the preferential right to sell option. However, nowhere in the contract provisions in question is such an obligation set forth.

The Court finds that, read in conjunction with the PRP provision, the preferential right to sell provisions of the various JOAs at the very least unambiguously create an option whereby a non-operating interest holder could offer to sell its interest in the subject wells or properties on the same terms as proposed by the operator for the sale of the operator's interest. It is not necessary for the Court to determine the precise scope and effect of these provisions, however, because the Court finds that PenSa did not effectively exercise, or attempt to exercise, such an option prior to the consummation of the transaction between Bays and Bays Energy.[8] Thus, Bays Energy is entitled to summary judgment on PenSa's counterclaim that the preferential right to sell provisions of the various JOAs were breached.

The maintenance of uniform interest provision:

With respect to the parties' dispute regarding application of the maintenance of uniform interest ("MUI") provision contained in each applicable JOA, the parties agree that the provision precludes both Bays and PenSa from selling, encumbering, transferring, or making other disposition of their respective interests in the oil and gas leases or in wells, equipment and production covered by such leases unless such disposition covers either (1) the party's entire interest in all oil and gas leases, oil and gas interests, wells, equipment and production, or (2) an equal undivided percent of the party's present interest in those items.

---

[8]It could be argued that Bays Energy's motion for summary judgment does not invite the specific analysis upon which the Court relies here. However, upon review of the extensive briefing and materials submitted by the parties, and the Court's knowledge of the vigorous discovery pursued by all parties, the Court is convinced that the facts have been fully developed, that there is no pertinent dispute of material fact in relation to the Court's ruling, and that summary judgment on this issue is appropriate.

PenSa alleges that Bays breached this provision because it retained an interest in the Woodford formation when it transferred its interests to Bays Energy. Its counterclaim seeks damages resulting from this alleged breach; alternatively, it seeks a declaratory judgment voiding any assignment made by Bays in violation of the MUI restriction.

Bays Energy argues PenSa cannot recover on this claim because the evidence shows it cannot have sustained damages as a result of Bays's retention of the Woodford formation. Furthermore, Bays Energy contends PenSa had already breached the MUI restriction at the time of the 2007 Agreement and proposed sale.

In response to the argument regarding its alleged damages, PenSa argues that it is damaged because Bays's retention of its interest in the Woodford formation creates a conflict of interest in that Bays is restricted from using any of the jointly owned well bores to produce from the Woodford formation, while PenSa has no such restrictions. PenSa concedes the measurement of resulting damages has not been separately calculated, but contends it is included in the overall damages calculated by its expert witness, as set forth in PenSa Exhibits 16 and 17.

With respect to its alleged transfer of interests to third parties, PenSa concedes that it executed contracts known as participation agreements, but contends its only agreements were with two individuals, Thomas Lynch and Robert Hannifin, to whom it assigned interests in two different wells. It is not disputed that PenSa notified Bays of those assignments, advising that, under the terms of those assignments, PenSa retained its working interests. *See* PenSa Ex 3. PenSa further states that Bays acknowledged its receipt of that notification, and it recognized that PenSa continued as "legally the party that holds the working interest." *See* Bays's March 11, 2002 email, PenSa Ex. 7. PenSa states that, even if its assignments violated the MUI provision, that should not excuse

Bays from a subsequent violation.

In its reply, Bays Energy reiterates its arguments concerning the absence of claimed damages resulting from the alleged breach of the MUI provision. Furthermore, Bays Energy points out that the well bore restriction on which PenSa relies does not support recoverable damages. Bays Energy acknowledges the restriction exists and that it could potentially create a conflict; however, it states that no conflict has occurred because there has been no proposal to use existing well bores for operations in the Woodford formation and that formation has not been tested since the sale by Bays. Affidavit of Joe Bays, Bays Energy Ex. 6, at ¶ 15. Thus, it argues that, even if this could form the basis for a damages claim by Pensa, the fact of such damage has not occurred.

To recover damages for a breach of contract, a party must prove the formation of a contract, its breach, and "damages as a direct result of the breach." *Digital Design Group, Inc. v. Information Builders, Inc.*, 24 P. 3d 834, 843 (Okla. 2001). "Damages claimed for a breach of contract cannot be recovered unless they are clearly ascertainable, both in their nature and origin, and it must be made to appear that they are the natural and proximate consequence of the breach of the contract and not speculative and contingent." *Fowler v. Lincoln County Conservation District*, 15 P. 3d 502, 507 (Okla. 2000) (citation omitted). "Moreover, under Oklahoma law, the amount awarded for breach of contract 'must be ascertainable in some manner other than by mere speculation, conjecture or surmise, and by reference to some definite standard.'" *Old West Annuity and Life Ins. Co. v. Progressive Closing & Escrows, Inc.*, 74 F. App'x 4, 8 (10th Cir. 2003) (unpublished opinion) (quoting *John A. Henry & Co., Ltd. v. T.G. & Y. Stores Co.*, 941 F.2d 1068, 1071 (10th Cir.1991)).

In this case, PenSa concedes its claimed damages for the purported breach of the MUI provision cannot be separately calculated. Not only does PenSa fail to present evidence regarding

the manner in which damages for the purported breach are to be calculated, it has offered no evidence to show that it has suffered *any* damage resulting from the alleged violation of the MUI. The issue is not only whether claimed damages can be calculated, but whether the *fact* of damage can be shown by PenSa. To overcome Bays Energy's summary judgment motion as to this claim, PenSa must submit admissible evidence sufficient to show a material factual dispute regarding its contention that it has been damaged by the breach of the MUI; it cannot rely on its allegations, but must present facts, admissible in evidence, from which a rational trier of fact could find in its favor. *Adler v. Wal-Mart Stores, Inc.*, 144 F. 3d 664, 671 (10th Cir. 1998).

PenSa has not satisfied its burden with regard to this claim because, even if a material fact dispute exists regarding whether the MUI provision was breached, it has failed to present facts to show that it has suffered any detriment as a result of that breach. Bays Energy is entitled to judgment on PenSa's counterclaim alleging a breach of the MUI provision.

Conclusion:

For the foregoing reasons, the motion for partial summary judgment of Bays Energy [Doc. No. 186] is GRANTED. The litigation will proceed on the parties' remaining claims.

IT IS SO ORDERED this 2nd day of March, 2011.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE